UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| **CONNIE ALMS,** | ) | |
| | ) | |
| Plaintiff, | ) | 2:04-cv-00332 JWS |
| | ) | |
| vs. | ) | **ORDER AND OPINION** |
| | ) | |
| **ADVANCEPCS, n/k/a CAREMARKRX, INC.,** | ) | [Re: Motions at dockets 50 & 56] |
| | ) | |
| Defendant. | ) | |

## I.  MOTIONS PRESENTED

At docket 50, AdvancePCS moves for summary judgment on the complaint filed by Connie Alms.  At docket 56, Alms moves to strike portions of AdvancePCS's statement of facts.  Both motions have been fully briefed.  Oral argument was heard on July 6, 2006.

## II.  BACKGROUND

In late 2001, AdvancePCS announced it would be moving its information security department from Scottsdale, Arizona, to Dallas, Texas, and that a position titled Senior Information Security Analyst ("SISA") would remain behind.[1]  The description for the

---

[1] Doc. 52, ex. 3, declaration of Rick Wenban, ¶¶ 4-5; doc. 57, ex. 4, attach. F.

SISA position listed five requirements: 1) experience with six security software products; 2) excellent client relationship skills; 3) high school degree and license or certification; 4) six to eight or more years of information security practitioner experience and three or more years of product-specific security experience; and 5) "journey" proficiency level.[2]

Everyone in the Scottsdale information security department was encouraged to apply for the SISA position, and AdvancePCS hired Rick Wenban to interview applicants. His first choice was Rebecca Carr, but he felt she would be more useful in Dallas and convinced her to move there.[3] His second choice was Anne Simonton,[4] and she accepted his offer. Simonton was twenty-six years old and had been working for AdvancePCS since January 4, 1999.[5] She satisfied four of the five listed requirements for the SISA position, but had zero years of information security practitioner experience. Her experience was limited to being a programmer and not a security practitioner and Wenban considered those to be distinct jobs.[6]

Like Carr and Simonton, Alms also applied for the SISA position. Alms was fifty-five and had been working for AdvancePCS since May 15, 2000.[7] AdvancePCS does not dispute that Alms met three of the five requirements for the SISA position: a high school degree and license or certification; six to eight or more years of information

---

[2] Doc. 57, ex. 4, attachment F.

[3] Doc. 52, ex. 4, deposition of Rick Wenban, pp. 127:19 - 128:14.

[4] *Id.*, ex. 4, p. 128:16.

[5] *Id.*, ex. 6, p. 4 (listing hiring date and date of birth).

[6] Doc. 57, ex. 5, deposition of Rick Wenban, p. 121:1-23.

[7] Doc. 52, ex. 1, deposition of Connie Alms, p. 11:8-23; doc. 57, ex. 4, attach. B.

security practitioner experience and three or more years of product-specific security experience; and journey proficiency level. Alms was especially strong on the experience front, having working in the information security field since 1985.[8] Regarding the remaining requirements, the parties agree Alms did not have experience with all six security software products listed in the job description, and disagree about whether she had excellent client relationship skills.

Wenban informed Alms that she had not been chosen for the SISA position in an exit interview on March 28, 2002. Wenban had been instructed by AdvancePCS human resources representatives not to engage in debate with employees who were not offered the SISA position.[9] Nevertheless, according to Alms, Wenban did spar with her. She remembers their interaction as follows: She asked him why Simonton was selected, and he replied, "I do not have to justify that."[10] She pressed him on Simonton's qualifications, and he said he and another person would "mentor [Simonton]."[11] Upon hearing that, she asked, "Oh, does that mean I'm too old to be mentored?"[12] It would have been understandable if Wenban had responded to this provocation, considering

---

[8] Doc. 57, ex. 2, p. 11.

[9] *Id.*, ex. 5, p. 137:13-24.

[10] Doc. 55, p. 5.

[11] *Id.*, p. 6.

[12] *Id.*

he was fifty-three at the time and had filed a charge of age discrimination against a former employer,[13] but he remained silent.[14]

Alms filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging she had been discriminated against on the basis of her age.[15] The EEOC determined reasonable cause existed to believe Alms's allegation was true.[16] This lawsuit followed.

### III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted when there is no genuine dispute about material facts and when the moving party is entitled to judgment as a matter of law.  The moving party has the burden to show that material facts are not genuinely disputed.[17]  To meet this burden, the moving party must point out the lack of evidence supporting the nonmoving party's claim, but need not produce evidence negating that claim.[18]  Once the moving party meets its burden, the nonmoving party must demonstrate that a genuine issue exists by presenting evidence indicating that certain facts are so disputed that a fact-finder must resolve the dispute at trial.[19]  The court must view this evidence in the light most

---

[13] Doc. 52, p. 10 ¶ 57; doc. 57, ex. 5, p. 149:15-18.

[14] Doc. 55, p. 6.

[15] Doc. 57, ex. 10.

[16] *Id.*, ex. 12, p. 1.

[17] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[18] *Id.* at 325.

[19] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

favorable to the nonmoving party, must not assess its credibility, and must draw all justifiable inferences from it in favor of the nonmoving party.[20]

## IV.  DISCUSSION

There are two theories of discrimination under the Age Discrimination in Employment Act ("ADEA"): disparate treatment and disparate impact.[21]  Alms relies on the disparate treatment theory.  Thus, she must ultimately persuade the finder of fact that her age "*actually* motivated" AdvancePCS's decision not to hire her for the SISA position.[22]  At the summary judgment stage, however, Alms only needs to create a genuine issue about that fact.

Alms can do that by offering direct or circumstantial evidence of AdvancePCS's discrimination against her.  For ADEA cases, the Ninth Circuit has defined direct evidence as "'conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude ... sufficient to permit the *fact finder* to infer that that attitude was more likely than not a motivating factor in the employer's decision.'"[23]  Circumstantial evidence "is evidence that requires an additional inferential step to demonstrate discrimination."[24]  To create a

---

[20] *Id.* at 255; *Soldano v. United States*, – F.3d – , 2006 WL 1897081 (9th Cir. 2006) (quoting *Olson v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004)).

[21] *Enlow v. Salem-Keizer Yellow Cab Co.*, 389 F.3d 802, 811 (9th Cir. 2004) (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993)).

[22] *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000)) (emphasis in original).

[23] *Id.* at 812 (quoting *Walton v. McDonnell Douglas Corp.*, 167 F.3d 423, 426 (9th Cir. 1999)) (alteration and emphasis in original).

[24] *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005).

genuine issue about an employer's alleged discrimination, courts accept "'very little'" direct evidence but require "'specific and substantial'" circumstantial evidence.[25]

Should Alms rely on circumstantial evidence, this court must apply what is known as the *McDonnell Douglas* formula to decide whether summary judgment is appropriate.[26] The first step under that formula requires Alms to establish a prima facie case of discrimination. To do that, she must show she is over forty years of age and thus within the class protected by the ADEA; suffered an adverse employment action; was similarly-situated to someone younger; and was treated less favorably than the younger person.[27] Once established, a prima facie case "'creates a presumption that [AdvancePCS] unlawfully discriminated against [Alms].'"[28] To dispel that presumption, AdvancePCS must "'produc[e] evidence that [Alms] was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason.'"[29] If AdvancePCS produces such evidence, Alms must come forward with evidence showing that AdvancePCS's

---

[25] *Id.* (quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221-22 (9th Cir. 1998)).

[26] *Enlow*, 389 F.3d at 812.

[27] The prima facie case is designed to eliminate a plaintiff's absolute or relative lack of qualifications as the reason for the adverse employment action. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 n.44 (1977). Because neither Simonton, the person who received the SISA position, nor Alms met all the requirements for the position, Alms does not need to eliminate her absolute lack of qualifications as the reason she did not get the job. However, she still must eliminate her relative lack of qualifications as the cause. She can do that by showing she and Simonton were similarly-qualified.

[28] *Enlow*, 389 F.3d at 812 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).

[29] *Id.* (quoting *Reeves*, 530 U.S. at 142) (alteration in original).

proffered reason is actually pretext for discrimination.[30]  She can demonstrate pretext by offering evidence that shows AdvancePCS's explanation is "'unworthy of credence.'"[31]

Alms contends both direct and circumstantial evidence support her claim.

## A.  Direct Evidence

Alms argues Wenban's silence in the face of her question about whether she was too old to be mentored is direct evidence of AdvancePCS's intent to discriminate against her on the basis of her age.  Her theory is that under the circumstances, it would have been natural for Wenban to deny her question if her age was not the reason she was not offered the SISA position.

The court disagrees.  Although Wenban responded to Alms's question about why Simonton was hired, her question based on her age was much more confrontational.  At that point, anyone who, like Wenban, had been told not to engage in debate, would have stopped talking.  Consequently, his silence does not suggest he agreed with the age-discrimination allegation implicit in Alms's question.

## B. Circumstantial Evidence

### 1. Prima Facie Case

Alms has established a prima facie case because she 1) was over forty years old; 2) suffered an adverse employment action by not being offered the SISA position; 3) was similarly situated to someone younger by virtue of the fact Simonton, like Alms, did not meet all the requirements for the SISA position and was twenty-nine years

---

[30]*Coghlan*, 413 F.3d at 1094-95.

[31]*Id.* at 1095 (quoting *Burdine*, 450 U.S. at 256 (1981)).

Alms's junior; and 4) was treated less favorably than the younger person because the position was offered to Simonton and not her.

### 2. AdvancePCS's Legitimate, Nondiscriminatory Reason

AdvancePCS contends it did not hire Alms because Simonton was more qualified. The company stresses the fact that Simonton had experience with all six security software products while Alms did not, and its impression that Simonton's client relationship skills were superior to Alms's.[32] That is a legitimate, nondiscriminatory reason for AdvancePCS's hiring decision.

### 3. Pretext

AdvancePCS's stated reason for not hiring Alms seems to be based on Wenban's belief that Simonton was not even hired for the SISA position. At his deposition, he emphasized his understanding that Simonton was hired for some unspecified, lower-level job.[33] Indeed, he appeared to think only two of the five requirements listed in the SISA job posting, experience with all six security software products and excellent client relationship skills, mattered.[34]

Yet, Wenban's testimony is not the only evidence of the level of, and requirements for, the position for which Simonton was hired. Another, quite obvious, piece of evidence is the job description posted by AdvancePCS. The description said the job was the SISA position and listed not merely two requirements, but five. From

---

[32] Doc. 50, p. 5.

[33] Doc. 57, ex. 5, p. 121:6-12.

[34] Doc. 52, ex. 4, p. 135:4-15.

that description, one can draw the extremely justifiable inference that the position it advertised was the job for which Simonton was hired and the requirements it listed were the qualifications that were necessary.

Alms's success in creating a genuine issue about whether AdvancePCS's stated reason for hiring Simonton is pretext depends on which of these versions is accepted. If Wenban's view is accepted, then the evidence Alms has submitted would not even make a prima facie case, let alone create a genuine issue about pretext. This is because she admittedly did not meet one of the two requirements – experience with all six security software products – while Simonton met both.

However, if the SISA job description is accepted, then Alms's evidence would create a genuine issue about pretext. Comparing that evidence to the requirements listed in the SISA job description reveals that both Simonton and Alms had a high school degree and license or certification; both had a journey proficiency level; Simonton had experience with six security software products while Alms did not; Alms had extensive information security practitioner experience while Simonton had none; and Simonton had excellent client relationship skills, while Alms also may have had those skills.[35] Given that comparison, a rational fact-finder could conclude that

---

[35]Doc. 57, ex. 4, attach. C, Connie Alms performance review, pp. 1 -5 (Alms "follows up with customers when there is a need for clarification"; "has built effective relationships with customers external to the department and has worked to educate the customers on policy, standard and procedure requirements"; "has maintained an effective relationship with all team members as well as customers"; "contributes to a supportive work environment by collaborating effectively with her team members and customers"; "collaborates effectively with other people both inside and outside of the department"; and "has excellent verbal communications skills"). There appears to be a question about whether Wenban looked at this performance review. He testified he did not look at it, doc. 52, ex. 4, pp. 60:24 – 61:2, but his testimony conflicts with what AdvancePCS told the EEOC, doc. 57, ex. 6, p. 2 ("AdvancePCS selected employees ... based on ... performance evaluations"), and what the company represents in its summary

Simonton was not more qualified than Alms and, therefore, that AdvancePCS's stated reason was pretext.

On summary judgment, the court must accept the second of those scenarios because it reflects the facts in the light most favorable to Alms and is the result of all justifiable inferences drawn in her favor. Thus, AdvancePCS's summary judgment motion must be denied.

### C. AdvancePCS's Suggested Inference Against Age Discrimination

AdvancePCS argues an inference against age discrimination arises because 1) it hired Alms when she was over forty and the alleged age discrimination associated with Wenban's decision not to offer her the SISA position occurred shortly thereafter; and 2) Wenban also was over forty when he decided not to offer the SISA position to Alms.

To support the first ground, AdvancePCS cites the Ninth Circuit case of *Coghlan v. American Seafoods Co. LLC*. In that case, the circuit court applied an inference against discrimination because the person within the defendant company who allegedly discriminated against the plaintiff was also the person who hired the plaintiff.[36] That inference does not apply here because Wenban, the person who allegedly discriminated against Alms, was not the person who initially hired Alms to work for AdvancePCS.

AdvancePCS cites Eleventh Circuit precedent to support the second ground. In *Elrod v. Sears, Roebuck & Co.*, the Eleventh Circuit observed the plaintiff's burden to show discrimination was "difficult ... because all of the primary players [involved in the

---

judgment motion, doc. 50, p. 10 (hiring "determination was based on ... performance evaluations"). This question must be resolved at trial.

[36] 413 F.3d at 1096.

alleged discrimination] were well over age forty."[37] For her part, Alms cites a Seventh Circuit decision explaining why an inference against age discrimination should not arise simply because the people who allegedly discriminated also are over forty.[38] The court finds the Seventh Circuit decision more persuasive. Moreover, the parties have not cited a Ninth Circuit case on point, and the court has found none. Consequently, the court will not apply an inference against age discrimination based on the fact Wenban also was over forty.

## V.  CONCLUSION

For the reasons set out above, the motion at docket 50 is **DENIED**, and the motion at docket 56 is **DENIED** as moot.

DATED at Anchorage, Alaska, this 18th day of July 2006.


/s/
JOHN W. SEDWICK
UNITED STATES DISTRICT COURT JUDGE

---

[37] 939 F.2d 1466, 1471 (11th Cir. 1991).

[38] *Kadas v. MCI Systemhouse Corp.*, 255 F.3d 359, 361 (7th Cir. 2001).